UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 08-10178-RWZ

VICTOR E. SMITH

v.

THOMAS DICKHAUT

ORDER

February 9, 2011

ZOBEL, D.J.

Petitioner Victor Smith was tried and convicted of first degree murder in Massachusetts Superior Court. The SJC affirmed the conviction as well as the denial of petitioner's motion for a new trial. He now petitions for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner argues that his trial counsel committed two errors of such significance as to constitute ineffective assistance of counsel in violation of the Sixth Amendment: (1) trial counsel presented a diminished capacity defense premised upon voluntary intoxication combined with the effects of a prescription medication rather than, in whole or in part, Smith's Tourette's Syndrome disability; (2) trial counsel did not object to the trial judge's failure to give a cautionary instruction on the credibility of a cooperating government witness.[1]

---

[1] Smith also appears to assign error to the superior court's decision not to hold an evidentiary hearing on the ineffective assistance of counsel claim. If he intends to raise a due process argument it is not properly before this court. The only ground for relief in his habeas petition is ineffective assistance of counsel, and his brief contains no legal argument and cites no legal authority that would have required the superior court to hold an evidentiary hearing.

## I. Background

The facts, as set forth by the Supreme Judicial Court ("SJC") in Commonwealth v. Smith, 864 N.E.2d 1194 (Mass. 2007), are that petitioner and his friend, Francis Albis, spent the evening of March 4, 2000 visiting bars in North Adams, Massachusetts. Petitioner suffers from Tourette's Syndrome, a neurological disorder with symptoms including involuntary movements and noises, and he took two Artane pills, a prescription medication that may moderate Tourette's symptoms, before going out. The two men stopped at three bars during the evening and consumed approximately ten alcoholic drinks each.

Smith and Albis encountered David Champagne, the victim, inside the last bar they visited that night. Smith became angry and told Albis that he wanted to "kick Champagne's ass" for beating up his cousin. Id. at 1196 (internal alteration marks omitted). After last call the two left the bar and hailed the driver of a nearby parked car to ask for a ride home. In a tragic coincidence, that man was Champagne, and he agreed to drive the two home. He did not know about petitioner's threatening comment.

Petitioner verbally confronted Champagne during the drive. When they arrived at Smith's apartment complex all three men got out of the car. Petitioner attacked Champagne, stabbed him twenty-two times, and left the victim in the street where he bled to death from the knife wounds.

Smith and Albis then entered the apartment building. Smith told a tenant that "he just did a guy" and was not afraid "to do another one." Id. at 1197. He announced

to Albis and other tenants that he would "get away with it" because he had Tourette's Syndrome.  Id.  He later repeated this theory to Albis' wife, and he threatened her and her five children when she talked about calling the police.

Police found Champagne's dead body in the street that morning.  They identified Albis and Smith as suspects and interviewed the two men separately.  Petitioner confessed to beating Champagne, but said he had no recollection of the stabbing.  He nonetheless told officers where he had put the knife and signed a consent form allowing a search of his apartment.  Albis also confessed.  Their confessions were corroborated with forensic evidence.

Petitioner was indicted and tried on a murder charge.  His counsel elected to pursue a diminished capacity defense premised on evidence of the effects of petitioner's voluntary intoxication combined with the Artane medication.  His strategy was to focus on petitioner's lack of mental capacity to form the specific intent required for murder, or at least murder in the first degree, and to argue for a verdict of manslaughter.  Counsel chose not to argue that Smith's Tourette's Syndrome was a contributing factor to the asserted diminished capacity.  The jury was given a voluntary intoxication instruction, but to no avail.  Smith was convicted of first degree murder and sentenced to life in prison.

Petitioner filed an appeal with the SJC and, later, in the Superior Court, motions for a new trial and for funds to obtain a PET scan.  He argued that the PET scan would show evidence of temporal lobe epilepsy, a condition which might render him incapable of recognizing the wrongfulness of actions.  The superior court allowed the motion for a

3

PET scan, and the scan did not find evidence of the epilepsy. The court then denied the motion for a new trial. (Mem. of Decision of Superior Court, Supplemental Answer at C 276-83.) The SJC thereafter heard, and denied, his appeal.

## II. Analysis

This court reviews petitioner's conviction under a deferential standard: the application for a writ of habeas corpus will not be granted unless the state court adjudication of his constitutional claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254. A state court decision is contrary to clearly established Supreme Court precedent if it applies a rule that contradicts the law set forth by the Court or confronts a set of facts materially indistinguishable from a decision of the Court but reaches a different result, and it is an unreasonable application if the precedent is applied to the facts in an objectively unreasonable manner. Brown v. Payton, 544 U.S. 133, 141 (2005).

The SJC held that counsel did not provide ineffective assistance when he made the strategic choice to present a diminished capacity defense based on voluntary intoxication rather than petitioner's Tourette's Syndrome. It evaluated petitioner's ineffective assistance claim under the standard set forth in Commonwealth v. Saferian, 315 N.E.2d 878, 882-83 (Mass. 1974), see Smith, 864 N.E.2d at 1202-03 (citing cases which apply the Saferian standard), which is "functionally identical to the federal standard." Mello v. DiPaulo, 295 F.3d 137, 144 (1st Cir. 2002). "A criminal defendant claiming a Sixth Amendment ineffective assistance violation must establish that (1)

4

counsel's representation fell below an objective standard of reasonableness, and (2) a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Smiley v. Maloney, 422 F.3d 17, 20 (1st Cir. 2005) (internal quotation marks omitted) (citing Strickland v. Washington, 466 U.S. 668 (1984)).

The SJC holding is neither contrary to nor an unreasonable application of this clearly established federal law. Counsel investigated a diminished capacity defense and retained a neuropsychologist to evaluate the theory. (Aff. of Paul Spiers, Supplemental Answer at C 22-25.) The expert was prepared to testify that on the night in question Smith had severely diminished capacity because of the effects of the alcohol and Artane, which were further enhanced by Tourette's Syndrome. (Id.) Counsel also knew that multiple witnesses could testify that Smith said he would get away with the killing because he had Tourette's, that Smith's treating physician would testify that Tourette's was not causally related to the murder, and that Smith's daily behavior did not demonstrate impaired comprehension or judgment. (Aff. of Leonard Cohen, Supplemental Answer at C 271-72.) In light of this information, counsel decided to forgo a defense based on Tourette's Syndrome and to proceed with intoxication as the focal point of the defense. " Smith, 864 N.E.2d at 1202.

The SJC noted the superior court's finding that a Tourette's defense would have emphasized petitioner's statements that he would escape liability because of his disability, and agreed that the voluntary intoxication testimony from the neuropsychologist "afforded the best opportunity for a manslaughter verdict. Without

that testimony, it was not at all clear that the defendant was entitled to a voluntary intoxication instruction." Id. at 1203. These facts adequately support the SJC's conclusion that it was not unreasonable for counsel to present the voluntary intoxication defense rather than one relying on Smith's Tourette's Syndrome.

Petitioner briefly points to counsel's failure to object when the trial judge did not deliver a cautionary instruction on the credibility of Albis, a cooperating government witness. But his brief does not identify any aspect of Albis' testimony that was contested. Other witnesses also observed Smith's behavior on the evening in question, and he confessed to the police. It is, in any event, improbable that counsel's oversight affected the outcome of the proceeding.

### III. Conclusion

The petition for a writ of habeas corpus is DENIED.

|  |  |
|---|---|
| February 9, 2011 | /s/Rya W. Zobel |
| DATE | RYA W. ZOBEL |
|  | UNITED STATES DISTRICT JUDGE |